JAMES R. COREY *vs.* JOSEPH S. EASTMAN.

Suffolk.　March 20, 1896. — May 25, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Declaration — Misstatements by Architect to Owner as to Value of Work done by Builder — Damages.*

A declaration in an action of tort alleging that the defendant, an architect, falsely, negligently, and acting in collusion with the builder, gave a certificate to the owner of a building for a partial payment under the contract to build, and represented that the value of the labor and materials which had then gone into the construction of the building would amount to the sum certified, in reliance upon which the owner paid to the builder the amount certified, states a legal cause of action.

An architect is liable in damages for negligently erroneous statements to his employer as to the value of work done by a builder on the strength of which his employer overpays the builder, if such statements were independent of the certificate called for by the contract between his employer and the builder.

TORT against an architect, for alleged misstatements of the amount of work done under a building contract, by the terms of which partial payments were to be made from time to time upon the certificate of the architect.

The first count of the declaration as amended alleged that the defendant was an architect, holding himself out as competent and skilful, and as possessing the requisite skill and knowledge for drawing building contracts and examining and superintending work; that the plaintiff, relying on the defendant's skill, knowledge, and advice, employed him to draw a contract in writing between the plaintiff and one Kite, together with certain plans and specifications for the erection by Kite of a dwelling-house for the plaintiff in Everett; that the defendant accordingly drew such a contract, and under his direction and advice the plaintiff executed the same, whereby the plaintiff became bound to Kite for the payment of a certain sum of money which he paid to him; that the defendant so ignorantly, carelessly, unskilfully, and negligently drew such contract that, in accordance with its provisions, the plaintiff was obliged to pay to Kite the sum of $850 "when all the stone and brick work of basement was completed, cesspool built and drain entered therein, and the first floor framed and boarded over," and

that, upon the certificate of the defendant that the work was completed and the money due, the plaintiff paid it to Kite; that the value of all the work performed and materials furnished when the money should have become due under the contract was only about $400; and that upon payment of the sum of $850, Kite abandoned the contract, and furnished no more labor or materials for the plaintiff's building, by reason of which and by reason of the payment having been improperly provided for in the contract, and having been required far in excess of the value of the construction at that time, and by reason of the negligence of the defendant and his collusion and conspiracy with Kite to wrong the plaintiff, the plaintiff was greatly injured.

The second count, reciting that the defendant was an architect holding himself out as possessing the requisite skill and knowledge for examining and superintending work under the building contract, alleged that the plaintiff, relying on the defendant's knowledge, skill, and advice, employed him to examine and superintend the work which one Kite was to do for the plaintiff, under a contract which had been drawn by the defendant and entered into by Kite and the plaintiff for the erection of a dwelling-house in Everett, and to certify when payments should be due and payable by the plaintiff under the contract, all of which the defendant agreed to do; that the defendant so ignorantly, carelessly, unskilfully, and negligently superintended the work, and gave certificates in regard thereto, that, whereas it was provided in the contract that the first payment of $850 should be made by the plaintiff to Kite " when all the stone and brick work of basement was completed, cesspool built and drain entered therein, and the first floor framed and boarded over," and that " the architect shall certify in writing that all the work upon the performance of which the payment is to become due has been done to his satisfaction," the defendant carelessly, ignorantly, and acting in collusion with Kite, gave to the latter a certificate that he, the defendant, had examined the work, and that the payment was due, and accordingly caused the payment to be made by the plaintiff to Kite, although in fact the defendant had not examined the work, and the work required to be done before the payment became due as specified in the contract had not been done, in that the cesspool had not been built and the

drain entered therein, nor the window frames in the brick work of the cellar properly constructed; that the work which should have been done when the payment was made was not then done, and has never since been done, Kite having thereafter abandoned the contract and done no more work on the building; that the defendant falsely, negligently, carelessly, and acting in collusion with Kite, gave the certificate, and represented to the plaintiff that the value of the labor and materials which up to that time had gone into the construction of the building would amount to $850, whereas in fact it amounted to only about $400; and that whereas it was the duty of the defendant not to give any certificate for payments by the plaintiff to Kite unless at such time the premises should be free from all liens and claims chargeable to Kite, and it was expressly provided in the contract " that before each payment, if required, the contractor shall give the architect good and sufficient evidence that the premises are free from all liens and claims chargeable to the said contractor," yet the defendant carelessly, ignorantly, and acting in collusion with Kite, gave the certificate and caused payment to be made by the plaintiff to Kite, although the premises were not free from liens and claims chargeable to the contractor, but there were existing liens on the premises which the plaintiff was subsequently compelled to pay, and the defendant did not require the contractor to give any evidence that the premises were free from liens, or otherwise ascertain such fact, whereby, and in consequence of such negligence and collusive acts of the defendant, and by reason of the abandonment of the work by Kite, the plaintiff was greatly injured.

The defendant demurred to the declaration, and assigned as grounds for the demurrer, (1) that the declaration did not set forth a cause of action; (2) that the substantive facts necessary to constitute a cause of action are not stated with substantial certainty; (3) that allegations in contract and in tort are joined in each count, so that neither count is a distinct action of tort, as it purports to be; (4) that whatever cause of action the plaintiff may have, if any, is not clearly stated, and the ground upon which he relies as the basis of the legal liability of the defendant is not clearly and concisely set forth; (5) that the declaration is substantially the same as others previously filed, and to which demurrers had been sustained.

The Superior Court overruled the demurrer, and the defendant appealed to this court. Trial in the Superior Court, before *Bond*, J., who reported the case for the determination of this court in substance as follows.

The plaintiff testified that he employed the defendant as architect to draw plans for a house to be erected in Everett, and to superintend its construction; that after he received the plans he obtained bids from several builders, and accepted that of one Kite; that he asked the defendant to draw the contract between him and Kite, and asked him how he should fix payments on the building, and the defendant said, "That is my business, I will see that you are protected all the way through"; that the plaintiff received the contract when drawn by the defendant, and executed it at his house with Kite; that the contract provided for six payments, the first payment of $850 to be made "when all the stone and brick work of basement was completed, cesspool built, and drain entered therein, and the first floor framed and boarded over"; and that the work proceeded, and on July 1, 1891, the contractor Kite demanded the first payment required by the contract, and presented the following certificate from the defendant: "Boston, July 1, 1891. To J. R. Corey. Dear Sir,— Thomas H. Kite, contractor for building your building on Dyer Av. & Buckman Street, in the town of Everett, wishes for his first payment on contract. I find on examination and inspection that he is entitled to said payment. You will pay to Thomas H. Kite or his order the sum of eight hundred and fifty ($850) dollars in full of first payment on agreement for building, dated 23 day of May, 1891, as stipulated therein. $850. Jos. S. Eastman, Arch't."

The plaintiff further testified that he went to the premises and examined the work that had been done, and then went to the defendant and told him that the work had not all been done which was required before the first payment was made; that the cesspool had not been built and the drain entered therein, and the defendant replied that the work that had been done was worth more than the money called for, and said that Kite had made all the window frames of the building; and that on July 2 or July 3 the plaintiff paid $850 to Kite, who afterward did no further work on the premises, but abandoned the contract and went into insolvency.

The plaintiff also introduced evidence of building experts, who did business in Everett, that the value of the work done at the time of the first payment was about $450, and that such work cost less in Everett than in Boston and vicinity, and that Kite had no shop in Everett where he could have made the window frames. Architects testified for the plaintiff that there were two methods adopted by architects in contracts for the building of a house, one of which was to divide the contract price into instalments payable at different stages of the work, and the other, and more generally adopted method at present, to make the instalments payable at regular periods of time, perhaps once a month; that there is no unvarying rule as to the number of payments; and that that matter depends much on the financial strength of the contractor and the convenience of the party, though it is a general rule to divide payments, fixing the payments at a smaller amount than the actual value of the work done, and that an accumulating reserve equal to a certain percentage of the relative value of the work done at the time of payment shall be retained by the owner until the completion of the work. On cross-examination of the architects, it appeared that what a building or any portion of it may cost is a matter of judgment as to which architects differ; that they are not always correct judges of the cost of buildings; and that contractors' bids will sometimes exceed, and sometimes fall below, the estimate of architects.

The defendant testified that he had been in business as an architect for thirty years; that he did not consult with the plaintiff as to the drawing of the contract, but that after the plaintiff had obtained the bids himself, and had accepted Kite, the plaintiff's wife came to him and asked him to draw the contract, which he did, arranging the payments according to his best judgment as to the cost of similar buildings the construction of which he had superintended, and sent it to the plaintiff, and that the contract was not executed in his presence, and that he had no conversation with the plaintiff about it; that he did not tell the plaintiff that it was his business to fix the payments, and that he would see that he was protected all the way through; that this first payment was no larger than payments for which he had provided on similar buildings, or than was customary with

him on such buildings, and that nothing was said between him and the plaintiff about the payments and how they should be made ; that all the work called for at the time of the first payment had been done except the cesspool and drain, and that a trench had been dug and the water pipes put in, which had not been called for ; that the cesspool had not been dug because the plaintiff did not wish to have it built then ; that when Kite requested the first payment he examined the work and gave Kite a certificate, believing him entitled to it under the contract ; that after giving it to him the plaintiff came to the defendant and said that he understood the contractor was rather shaky and not to be relied upon, and the defendant told him if there was any question about it to defer payment until the defendant could make inquiries, but that the plaintiff paid Kite on the following day ; that he did tell the plaintiff that Kite had said that he had the window frames ordered and made, which indicated that Kite was going on with the work, but no window frames had then been delivered on the premises ; that he expressed no opinion to the plaintiff as to the value of the work, and did not state that it was worth more than the payment called for, nor say anything to induce him to pay Kite, but that in his judgment the work was worth $900 ; and that he had no communication with Kite before the execution of the contract, and that there was no collusion with Kite as to the giving of a certificate, and that there was no consideration or inducement from Kite to him for drawing the contract, arranging the payments, or giving the certificate.

On cross-examination he testified that a year or two before this transaction Kite had built another house in Everett under his supervision ; that he was not familiar with the cost of stone, labor, and excavating in Everett; that in fixing the payment of $850, he compared it with other basements he had put in of about the same size and cost, but that he did not think he had inquired from an Everett builder the cost of a building at that stage ; that without his client's consent he would not draw a contract allowing the owner to pay more than the value of the work and materials that had gone into the building at the time of payment; that there is a general custom among architects to leave a small margin, but if the contractor was responsible none

might be left, although they would be likely to leave ten per cent; and that he would not allow for much margin on the first payment, but if the contractor was known to be doubtful he should require that the owner retain twenty per cent, but he knew of no general rule to that effect.

The defendant also introduced the evidence of masons and carpenters, builders of experience, that in their judgment the work was worth from $850 to $900, but none of them had had any experience in building in Everett. The building contract, which was drawn by the defendant and executed by the plaintiff and Kite, provided for partial payments, the first of which was to be $850 " when all the stone and brick work of basement was completed, cesspool built and drain entered therein, and the first floor framed and boarded over."

At the conclusion of the evidence, the defendant requested the judge to direct a verdict for the defendant. The judge declined so to do; and the defendant excepted.

The defendant requested the judge to rule that, there being no evidence of fraud on the part of the defendant, or of collusion with Kite, or of his conspiring with Kite to wrong the plaintiff, the verdict should be for the defendant; that the defendant is not liable in this action for any misjudgment as to the value of the work done at the time of the first payment; that the plaintiff cannot recover in this action on account of any alleged promise or agreement of the defendant that he would attend to the drawing of the contract and arrange the payments, and would see that the plaintiff was protected all the way through, or on account of any alleged promise or agreement to protect and save harmless the plaintiff; that the defendant is not liable in this action, in the absence of fraud, for the arrangement of the division of the payments to be made in the construction of the house, the plaintiff having taken the contract, read and accepted the same, and afterwards executed it at his house with the builder employed by him; that, to entitle the plaintiff to recover, he must establish by a fair preponderance of evidence that the defendant acted fraudulently, or in collusion or conspiracy with Kite, to wrong and defraud the plaintiff; and that as the plaintiff knew that all the work called for before the first payment was not completed, that the cesspool had not been built and the drain entered therein, the defendant is not liable

in this action for the mere expression of opinion as to the value of the work at that stage, if the same was given according to his best judgment, and without fraud or collusion with Kite.

The judge declined so to rule, and gave instructions to the jury, which were not excepted to except so far as the jury were instructed that the defendant was liable, and to what extent, because of his statement to the plaintiff prior to the first payment to Kite.

On this point the judge instructed the jury, in substance, that if they found that prior to the payment of $850 by the plaintiff to Kite the defendant made a declaration to the plaintiff that the work at that time was worth more than $850, knowing that it was not of that value, or when he might have known it if he, had taken reasonable care to ascertain its value, and the plaintiff, relying upon the declaration of the defendant, made the payment to his damage, the defendant is liable, and the measure of damages is the difference between $850 and such amount as the work is found to be worth.

The jury returned a verdict for the defendant upon the first count, and for the plaintiff upon the second; and the judge reported the case for the determination of this court.

*F. S. Hesseltine,* for the defendant.

*W. F. Prime,* for the plaintiff.

HOLMES, J. This is an action against an architect for alleged misstatements of the amount of work done under a building contract by the terms of which, as usual, partial payments were to be made from time to time upon the architect's certificate. The jury found a verdict for the defendant on the first count, so that only the second count needs to be considered. On that they found for the plaintiff. The case is here on a report of the defendant's appeal and exceptions.

The appeal is from the overruling of the defendant's demurrer. The decision was right. The second count charges that the defendant falsely, negligently, and acting in collusion with the builder, gave a certificate under the contract, and represented that the value of the labor and materials which had gone into the construction of the building would amount to the sum certified, etc. This, we think, in spite of the word "negligently," is raised by the allegation of collusion to a somewhat timid charge of fraud; *Batterbury* v. *Vyse,* 2 H. & C. 42, 46;

and whatever may be the view of an architect's position in giving a certificate, no one, we suppose, would doubt that a fraudulent combination with the builder to give a false certificate, if followed by payment on the faith of the representation, would be a good cause of action. *Batterbury* v. *Vyse*, 2 H. & C. 42. *Ludbrook* v. *Barrett*, 46 L. J. (N. S.) C. P. 798. *Stevenson* v. *Watson*, 4 C. P. D. 148, 158, 159.

The claim for damages was put to the jury as standing on an alleged negligent or wilfully false statement by the defendant in conversation with the plaintiff, distinct from the defendant's act of certifying the sum paid to be due. No question of variance is before us, but the question raised is whether the defendant was liable as a matter of substantive law if he made such a negligent statement to the plaintiff as to the value of the work done, and if the plaintiff paid on the strength of it. Probably under the English law the defendant would not be liable for negligence in making his certificate upon a matter which the plaintiff and the builder had agreed by their contract to leave to him. *Stevenson* v. *Watson*, 4 C. P. D. 148. *Tharsis Sulphur & Copper Co.* v. *Loftus*, L. R. 8 C. P. 1. *Pappa* v. *Rose*, L. R. 7 C. P. 525; *S. C.* L. R. 7 C. P. 32. Compare *Irving* v. *Morrison*, 27 U. C. C. P. 242; *Thomas* v. *Fleury*, 26 N. Y. 26, 33, 34. But a different principle may come in with regard to oral advice or statements to his employer. In making them the architect is or may be found to be rendering a purely partisan service under his contract, and if he is, then he is bound to show reasonable care and reasonable professional judgment. As a consequence of his contract of employment the law throws the risk of his statements upon him at an earlier point than it would do otherwise. But for the contract he would not be liable for statements unless fraudulent, or for advice unless dishonest. Under the contract negligently erroneous statements and imprudent advice become torts, on the same principle that under a warranty an erroneous statement was a deceit by the old common law, without even negligence. See *May* v. *Western Union Telegraph Co.* 112 Mass. 90; *Tasker* v. *Stanley*, 153 Mass. 148, 150; *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 587; *Petersen* v. *Rawson*, 34 N. Y. 370; *Shipman* v. *State*, 43 Wis. 381.

*Judgment on the verdict.*