ABRAHAM GLANZER et al., Copartners under the Trade Name of GLANZER BROS., Respondents, *v.* LEVI SHEPARD et al., Copartners under the Trade Name of CORE & HERBERT, Appellants.

**Practice — trial — motion by both parties for direction of verdict — when ruling by trial judge directing a verdict stands with same force as verdict of a jury — negligence — when defendants engaged in business as public weighers liable to purchaser of goods negligently weighed by them for amount overpaid by purchasers, although sellers of goods engaged defendants to do the weighing.**

1. Where both parties to an action have moved for the direction of a verdict without other request, the ruling of the trial judge, directing a verdict, stands with the same force as the verdict of a jury. If the purpose of the parties, the relation that arose between them and the significance of the transaction may be the subject of conflicting inferences, those most favorable to the successful party must be deemed to have been accepted.

2. One who follows a common calling may come under a duty to another whom he serves, though a third may give the order or make the payment. One who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.

3. Where defendants, who are engaged in business as public weighers, were requested by sellers of merchandise to weigh and make a return of the weight thereof and furnish the buyers, the plaintiffs herein, with a copy of the return, and the merchandise was accepted and paid for on the faith of the certificates and plaintiffs thereafter found that the actual weight was less than the weight certified in the return, the defendants are liable to plaintiffs for the amount they overpaid.

*Glanzer* v. *Shepard*, 194 App. Div. 693, affirmed.

(Argued March 10, 1922; decided April 18, 1922.)

APPEAL, by permission, from a judgment entered January 21, 1921, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed a determination of the Appellate Term,

reversing a judgment of the City Court of the city of New York in favor of plaintiffs entered upon a verdict directed by the court and affirmed said City Court judgment.

*Bernard P. Ryan* and *Adolph E. Gutgsell* for appellants. The Appellate Division decided this case on the principle laid down in *McPherson* v. *Buick Motor Co.* (217 N. Y. 382), but this principle applies only to things inherently dangerous or reasonably certain to put life or limb in peril when negligently made. (*Thomas* v. *Winchester* 6 N. Y. 397; *Loop* v. *Litchfield*, 42 N. Y. 351; *Devlin* v. *Smith*, 89 N. Y. 470; *Statley* v. *Ray Mfg. Co.*, 195 N. Y. 478; *Torgesen* v. *Schultz*, 192 N. Y. 156; *Burke* v. *Ireland*, 26 App. Div. 487; *Kohner* v. *Otis Elevator Co.*, 96 App. Div. 169; *Davies* v. *Pelham Hod Elevator Co.*, 65 Hun, 573; *Leeds* v. *N. Y. Tel. Co.*, 178 N. Y. 118; *Sweet* v. *Perkins*, 196 N. Y. 482.)

*I. Maurice Wormser* and *I. Gainsburg* for respondents. The defendants were under a legal duty to the plaintiffs to weigh the bags of beans accurately, and they are responsible to the plaintiffs for the damages sustained by reason of their negligence in weighing the beans. (Cooley on Torts [2d ed.], 277; *Black* v. *N. Y., N. H. & H. R. R. Co.*, 193 Mass. 448; Burdick on Torts [1st ed.], 10; *Coggs* v. *Bernard*, 1 Smith's L. C. 177; *McPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Wainwright* v. *Q. C. Water Co.*, 78 Hun, 146; *Pond* v. *New Rochelle Water Co.*, 183 N. Y. 330; *Thomas* v. *Winchester*, 6 N. Y. 397; *Milliken* v. *Western Union Tel. Co.*, 110 N. Y. 403; *Wolfskehl* v. *Western Union Tel. Co.*, 46 Hun, 542; *Smith* v. *London Assurance Corp.*, 109 App. Div. 882; *Link* v. *Sheldon*, 136 N. Y. 1; *Glyn* v. *Title Guarantee & Trust Co.*, 132 App. Div. 859.)

CARDOZO, J. Plaintiffs bought of Bech, Van Siclen & Co., a corporation, 905 bags of beans. The beans

were to be paid for in accordance with weight sheets certified by public weighers. Bech, Van Siclen & Co., the seller, requested the defendants, who are engaged in business as public weighers, to make return of the weight and furnish the buyers with a copy. A letter to the weighers, dated July 20, 1918, informed them that the bags were on the dock, that the beans had been sold to Glanzer Bros., the plaintiffs, who would accept delivery Tuesday, July 23, and that the defendants were to communicate with the plaintiffs, and ascertain whether it would " be in order " to be on the pier Tuesday morning to weigh the beans before delivery. The defendants did as bidden. They certified the weight of the 905 bags to be 228,380 pounds, and were paid for the service by the seller. Their return recites that it has been made " by order of " Bech, Van Siclen & Co., " for G. Bros." One copy of the return they sent to the seller, and a duplicate to the buyers. Later, 17 bags, containing 4,136 pounds, were withdrawn from the shipment. The others were accepted and paid for on the faith of the certificates. The plaintiffs, upon attempting a resale, found that the actual weight was less by 11,854 pounds than the weight as certified in the return. Upon learning this, they brought suit against the defendants in the City Court of New York for $1,261.26, the amount overpaid. The trial judge, upon motions made by each side for the direction of a verdict, ordered judgment for the plaintiffs. The Appellate Term reversed upon the ground that the plaintiffs had no contract with the defendants, and must seek their remedy against the seller. The Appellate Division reversed the Appellate Term, and reinstated the verdict. The defendants are the appellants here.

We think the law imposes a duty toward buyer as well as seller in the situation here disclosed. The plaintiffs' use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers' knowledge, was the end

and aim of the transaction. Bech, Van Siclen & Co. ordered, but Glanzer Brothers were to use. The defendants held themselves out to the public as skilled and careful in their calling. They knew that the beans had been sold, and that on the faith of their certificate payment would be made. They sent a copy to the plaintiffs for the very purpose of inducing action. All this they admit. In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed. We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law (cf. *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382, 390).

There is nothing new here in principle. If there is novelty, it is in the instance only. One who follows a common calling may come under a duty to another whom he serves, though a third may give the order or make the payment (1 Street, Foundations of Legal Liability, pp. 187, 188; Bohlen, Affirmative Obligations in the Law of Torts, 44 Am. Law Reg. [N. S.] 209, 218, 293, 294; 3 Holdsworth, History of English Law, p. 332). " It is the duty of every artificer to exercise his art rightly and truly as he ought " (Fitzherbert Abr., Trespass sue le Case, 94d, quoted by Bohlen, *supra*, p. 293). The surgeon who unskillfully sets the wounded arm of a child is liable for his negligence, though the father pays the bill (*Gladwell* v. *Steggall*, 5 Bing. N. C. 733; *Pippin* v. *Sheppard*, 11 Price, 400–411). The bailee who is careless in the keeping of the goods which he receives as those of A, does not escape liability though the deposit may have been made by B. It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all (*Coggs* v. *Bernard*, 2 Ld. Raymond, 909;

*Shiells* v. *Blackburne,* 1 H. Bl. 158; WILLES, J., in *Skelton* v. *L. & N. W. Ry. Co.,* L. R. 2 C. P. 631, 636; KENT, Ch. J., in *Thorne* v. *Deas,* 4 Johns. 84, 96). The most common examples of such a duty are cases where action is directed toward the person of another or his property (Street, *supra*). A like principle applies, however, where action is directed toward the governance of conduct. The controlling circumstance is not the character of the consequence, but its proximity or remoteness in the thought and purpose of the actor. There are decisions that a lawyer who supplies a certificate of title to a client is not answerable to a third person whom he did not mean to serve (*Savings Bank* v. *Ward,* 100 U. S. 195; cf. *Glawatz* v. *People's Guaranty Search Co.,* 49 App. Div. 465; *Day* v. *Reynolds,* 23 Hun, 131). " Neither fraud nor collusion is alleged or proved; and it is conceded that the certificates were made by the defendant at the request of the applicant for the loan, without any knowledge on the part of the defendant what use was to be made of the same or to whom they were to be presented " (*Savings Bank* v. *Ward, supra,* p. 199). No such immunity, it has been held, protects the searcher of a title who, preparing an abstract at the order of a client, delivers it to another to induce action on the faith of it (*Economy Bldg. & Loan Assn.* v. *West Jersey Title Co.,* 64 N. J. L. 27; *Denton* v. *Nashville Title Co.,* 112 Tenn. 320; *Anderson* v. *Spriestersbach,* 69 Wash. 393; *Murphy* v. *Fidelity Abstract & Title Co.,* 114 Wash. 77; *Brown* v. *Sims,* 22 Ind. App. 317; *Western Loan Co.* v. *Silver Bow Abstract Co.,* 31 Mont. 448; *Lawall* v. *Groman,* 180 Penn. St. 532; cf. *Scholes* v. *Brook,* 63 L. T. [N. S.] 837, 838; affd., 64 id. 674). Constantly the bounds of duty are enlarged by knowledge of a prospective use (*MacPherson* v. *Buick Motor Co., supra,* p. 393; BRETT, M. R., in *Coventry, Sheppard & Co.* v. *Great Eastern Ry. Co.,* L. R. 11 Q. B. D. 776, 780; cf. *Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.,* 106 N. Y. 195, 199). We must view the act in its setting,

which will include the implications and the promptings of usage and fair dealing. The casual response, made in mere friendliness or courtesy (*Fish* v. *Kelly*, 17 C. B. [N. S.] 194, 205, 207; Bohlen, *supra*, p. 374; Street, *supra*, p. 408) may not stand on the same plane, when we come to consider who is to assume the risk of negligence or error, as the deliberate certificate, indisputably an " act in the law " (Pollock, Contracts [8th ed.] p. 3), intended to sway conduct. Here the defendants are held, not merely for careless words (*Le Lievre* v. *Gould*, 1893, 1 Q. B. D. 491; Pollock, Torts |10th ed.], pp. 301, 302; Jeremiah Smith, Liability for Negligent Language, 14 Harvard Law Review, 184, 195), but for the careless performance of a service — the act of weighing — which happens to have found in the words of a certificate its culmination and its summary (cf. *Corey* v. *Eastman*, 166 Mass. 279, 287). The line of separation between these diverse liabilities is difficult to draw. It does not lose for that reason its correspondence with realities. Life has relations not capable always of division into inflexible compartments. The moulds expand and shrink.

We state the defendants' obligation, therefore, in terms, not of contract merely, but of duty. Other forms of statement are possible. They involve, at most, a change of emphasis. We may see here, if we please, a phase or an extension of the rule in *Lawrence* v. *Fox* (20 N. Y. 268) as amplified recently in *Seaver* v. *Ransom* (224 N. Y. 233). If we fix our gaze upon that aspect, we shall stress the element of contract, and treat the defendants' promise as embracing the rendition of a service, which though ordered and paid for by one, was either wholly or in part for the benefit of another (*DeCicco* v. *Schweizer*, 221 N. Y. 431; *Rector, etc., St. Mark's Church* v. *Teed*, 120 N. Y. 583). We may find analogies again in the decisions which treat the sender of a telegram as the agent of the recipient (*Wolfskehl* v. *W. U. Tel. Co.*, 46 Hun, 542; *Milli-*

*ken* v. *W. U. Tel. Co.*, 110 N. Y. 403). These other methods of approach arrive at the same goal, though the paths may seem at times to be artificial or circuitous. We have preferred to reach the goal more simply. The defendants, acting, not casually nor as mere servants, but in the pursuit of an independent calling, weighed and certified at the order of one with the very end and aim of shaping the conduct of another. Diligence was owing, not only to him who ordered, but to him also who relied.

Other points are made by counsel. We have not failed to consider them, but they do not alter our conclusion. Both sides having moved for the direction of a verdict without other request, the ruling of the trial judge stands with the same force as the verdict of a jury (*Adams* v. *Roscoe Lumber Co.*, 159 N. Y. 176). If the purpose of the parties, the relation that arose between them and the significance of the transaction may be the subject of conflicting inferences, those most favorable to the plaintiffs must be deemed to have been accepted.

The judgment should be affirmed with costs.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; HOGAN, J., dissents.

Judgment affirmed.