CORA L. DOSTER, Plaintiff, *v.* BINGHAMTON GAS WORKS, Defendant.

DONALD R. DOSTER, Plaintiff, *v.* BINGHAMTON GAS WORKS, Defendant.

County Court, Broome County, March 9, 1950.

*Edward E. O'Brien* for plaintiffs.

*C. Addison Keeler* for defendant.

McAvoy, J. This was an action in negligence. Plaintiff Donald Doster also sued for loss of his wife's services. The defendant on the trial moved for a dismissal of the complaint on the ground plaintiff had failed to establish a prima facie case. Decision was reserved and the issues submitted to the jury. The jury disagreed and defendant has moved for a ruling on its motion.

On a determination of such motion the plaintiff must be given the benefit of the most favorable inferences that can be drawn from the testimony. It appears from the evidence that plaintiff, Cora Doster, became ill on September 24, 1948. Her illness was diagnosed as angina pectoris. Shortly thereafter she detected in her home an odor similar to illuminating gas. On November 16, 1948, she notified the defendant gas company, as there was installed in the basement of her home an automatic water heater operated by gas supplied by said company. This water-heating apparatus had not been installed or maintained by defendant.

Employees of defendant were sent to investigate. They inspected the pipes and heater but found no leak and advised plaintiff it might be the coal furnace. Thereupon plaintiff had the furnace inspected by the company which had installed it. They found nothing. The odor persisted and plaintiff again called the gas company on December 1, 1948. They again inspected the premises and dug up their pipes outside to see if there was a leak in the main line. No leak was discovered on this occasion by defendant. About this time the odor was so strong plaintiff was forced to abandon the house for a few days. Once again on December 6th defendant sent its employees and an engineer to make a further inspection. Their tests showed a percentage of monoxide gas present and they informed plaintiff that it was coming from the furnace. Plaintiff then called in the Douglas Furnace Company on December 13th and after they had dismantled the stoker and checked the furnace the odor of gas was still present.

Then on December 16th the company where plaintiff's husband was employed sent their chemist, one Mr. Scheer, to make an inspection of the premises. His inspection did not include the gas water heater system because he had been informed that this had been checked by the gas company. His

tests showed the presence of carbon monoxide in the air and he recommended that, the coal furnace be torn down and reset. He also suggested that some other changes be made in it to conform with good practice. Plaintiffs thereupon had the furnace torn down and reset but the odor was still present.

Right after Christmas plaintiff and her husband took a few days vacation. The gas supplying the heater was turned off but the furnace was in operation. During this period Mr. Scheer the chemist again took tests and found no indication of carbon monoxide present in the air. The gas was again turned on and the same odor returned. Mr. Scheer then took additional tests on December 30th and found carbon monoxide present in even greater quantities than before. He thereupon turned his attention to the gas water heater. He inspected the pipes leading to it and found no leak. He then moved the thermostat up so the heater would turn on and checked the system. In approximately one minute he found the leak. A plumber was called and he found a broken washer underneath a nut on the heating system. It was through the broken washer that the gas was escaping. When this was repaired the odor and presence of gas vanished and did not return.

The theory of plaintiff's case was that the defendant gas company, having undertaken to discover the leak, was negligent in not doing so and as a result the plaintiff's illness was prolonged and aggravated from that time.

The defendant on the other hand claims that there was insufficent evidence produced by plaintiff to warrant submitting the question of its negligence to the jury. It further claims that there was no evidence produced to show that its negligence, if any, caused or contributed to plaintiff's illness or its alleged prolongation or aggravation in any manner.

In determining these issues we must first consider the nature and extent of defendant's duty to the plaintiff under the relationship existing between them.

It is the law " that where one undertakes to do something involving a dangerous situation he must do it with reasonable care even though he is not under any contract obligation to do anything at all ". (*Miller* v. *City of Rochester*, 196 App. Div. 853, 855; *Miller* v. *International Harvester Co.*, 193 App. Div. 258; *Glanzer* v. *Shepard*, 233 N. Y. 236.)

It also appears to be the generally accepted rule that while a gas company is not required to examine or inspect pipes or apparatus belonging to the owner of a building to which it furnishes gas — yet if it is put on notice or in possession of such

facts that would suggest to a person of ordinary care and prudence that such pipes or apparatus in the building are leaking, or are otherwise unsafe for the transportation of gas, it then becomes the duty of the company to make such an inspection or investigation as a person of ordinary care and prudence in such a situation, and handling such dangerous agency would make. (*Bell* v. *Brooklyn Union Gas Co.*, 193 App. Div. 669; 25 A. L. R. 272; 24 Am. Jur., Gas Companies, § 32.)

The defendant here was notified of a situation involving escaping gas in plaintiff's premises. It undertook to investigate and inspect. Therefore it became its duty to do so with that ordinary care and prudence required by the circumstances. Did defendant discharge its duty in accordance with such standard? Would the exercise of such care in the inspection have revealed the leak? It seems to me that the answers to these questions are, under the proof presented here, for the jury to determine and not the court.

The jury would have the right to infer from the proof herein above outlined that the gas detected in plaintiff's premises came from the leak in the gas-operated water heater. The jury would also have the right to infer from such proof that defendant's employees were negligent in not discovering it.

In *Krzywoszynski* v. *Consolidated Gas Co.* (4 App. Div. 161, 163) the court there stated: " The question arising on this appeal is, was there proof sufficient to go to the jury as making out a *prima facie* case of negligence on the part of the defendant's workmen, and it involves a consideration of all the evidence presented. Of positive and direct evidence of any act or acts constituting negligence the record is barren; but in a case of this character it is not absolutely necesssary to a recovery that a witness should be able to testify from personal knowledge or observation, to the particular fact relied upon as constituting negligence, but where from the condition of the proof an inference may be justly and fairly drawn of negligence on the part of the defendant, the circumstances should be submitted to the jury, and it is for them to decide whether the negligence existed or not ".

We feel that a similar situation is presented in the case at bar.

The final question to be determined is whether there is any evidence in the case upon which the jury could properly infer a causal connection between the escaping gas, the defendant's negligence, if any, and the alleged prolongation or aggravation of plaintiff's illness.

There is evidence in this connection that when plaintiff was out of the house she felt somewhat better and that her pain would ease up, but when she returned to her home it would again occur. There is also evidence that after the gas leak was repaired the plaintiff felt more like herself and her pain began to let up — that within ten days the pain left her and she has had no recurrence since. Plaintiff's doctor testified that illuminating gas inhaled by plaintiff containing 0.05% carbon monoxide would be a competent producing cause of her illness — and that in his opinion it did cause her condition.

Whether there was carbon monoxide gas in the escaping gas furnished by defendant was not specifically proven by the plaintiff. There was proof that when defendant's gas was turned off for a period prior to December 28th the air in the premises was clear and there was no indication of carbon monoxide gas present. Immediately after the gas was turned on it was found in even larger quantities. Therefore from this state of the record there is some evidence from which the jury might infer that plaintiff's illness was prolonged and aggravated by the escaping gas and that such gas did contain a percentage of carbon monoxide. At least there appears to have been presented sufficient evidence, even though of a circumstantial nature, to warrant submission of this issue to a jury.

The motion is therefore denied.