ANGLO–AMERICAN AND OVERSEAS
CORPORATION, Plaintiff,

v.

UNITED STATES of America,
Defendant.

United States District Court
S. D. New York.

Feb. 9, 1956.

Leonard Feldman, New York City, for plaintiff.

Paul W. Williams, U. S. Atty., for Southern Dist. of New York, New York City, Amos J. Peaslee, Jr., Asst. U. S. Atty., New York City, for the United States.

WALSH, District Judge.

This is an action for a declaratory judgment and for damages under the Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 et seq. Defendant moves to dismiss the complaint for failure to state a claim on which relief can be granted. Its motion is granted.

Plaintiff, a merchant engaged in the purchase and sale of imported food products, had agreed to buy certain lots of tomato paste which were to be imported providing the defendant did not exclude them pursuant to the Pure Food, Drug and Cosmetic Act § 801(a), 21 U.S.C.A. § 381(a). Defendant, although not required to sample all food imports, actually sampled the lots in question and released them. Their release was accompanied by a release notice to the im-

porter stating that each lot "need not be further detained insofar as Section 801 of the Food, Drug and Cosmetic Act is concerned". This was the form of release used when defendant had actually examined a sample of the lot and is to be distinguished from the release "no sample required" which was used when defendant, in its discretion, had not requested a sample. Defendant is alleged to have had knowledge that the release notice would be relied on as a certificate of lack of violation of the Act.

After the tomato paste had been released it was accepted by plaintiff and tendered to the United States government as the ultimate purchaser. Apparently the adulterated condition of the food was then noted and the government refused to accept delivery. In any event, the tomato paste was condemned and destroyed. No question has been raised as to the actual adulterated condition or the propriety of the confiscation and destruction. Plaintiff's claim is based upon defendant's original failure to reject the paste as an import. Plaintiff claims that defendant was negligent in its original examination and in the issuance of the original certificate. Defendant contends (1) that it owed no duty to plaintiff and (2) that even if a private person might be liable, this claim is barred by those exceptions to the Tort Claims Act which protect the government from suit for the performance of discretionary functions and for misrepresentation. 28 U.S.C.A. § 2680(a) (h).

■■ Even though defendant were a private person it would not be liable to plaintiff for the negligent performance of a duty primarily owed to someone else. The mere fact that plaintiff and its importer saw fit to condition their contract upon the action taken by defendant did not create any liability upon the defendant for their benefit. Ultramares Corp. v. Touche, 1931, 255 N.Y. 170, 183, 174 N.E. 441, 74 A.L.R. 1139; O'Connor v. Ludlam, 2 Cir., 1937, 92 F.2d 50, 52, 53, certiorari denied 1937, 302 U.S. 758, 58 S.Ct. 364, 82 L.Ed. 586; Iodice

v. State, 1951, 277 App.Div. 647, 102 N.Y.S.2d 742, 744, 749, affirmed 1951, 303 N.Y. 740, 103 N.E.2d 348. Here there was not the "intimate nexus" found between plaintiff and defendant in Glanzer v. Shepard, 1922, 233 N.Y. 236, 240, 242, 135 N.E. 275, 23 A.L.R. 1425. Neither was the defendant comparable to a common carrier or a person dedicated to a common calling who for compensation paid by one person owed a duty to another. Defendant was not paid by anyone to perform a service for plaintiff; neither was it paid or required by law to perform an inspection service for merchants generally. Merchants who forewent their own inspection in reliance on that of defendant did so at their peril.

The duty imposed on the defendant under the Pure Food, Drug and Cosmetic Act was a duty primarily owing to the ultimate consumer and not to the intermediate dealer. The act shows no concern for dealers in adulterated products. Whether they are innocent or deliberate, their adulterated goods may be destroyed without compensation, 21 U.S.C.A. § 334(d), and they are even required to bear the cost of the proceeding for destruction. 21 U.S.C.A. § 334 (e). Even in criminal prosecutions their defense of good faith is limited. 21 U.S.C.A. § 333. Adulterated food is treated as a deodand; no duty is owed to it or to its owner, except as expressly provided. The Supreme Court has consistently spoken of the purpose of the act as a protection of the consumer, rather than the dealer. United States v. Sullivan, 1948, 332 U.S. 689, 696, 698, 707, 68 S.Ct. 331, 92 L.Ed. 297; United States v. Dotterweich, 1943, 320 U.S. 277, 282–283, 64 S.Ct. 134, 88 L.Ed. 48. Also analogous are cases holding that labels are to be tested against the danger of deceit to the ultimate consumer rather than dealers. See United States v. Two Bags, etc., 6 Cir., 1945, 147 F.2d 123, 127, and United States v. Kocmond, 7 Cir., 1952, 200 F.2d 370, 373, certiorari denied, 1952, 345 U.S. 924, 73 S.Ct. 782, 97 L.Ed. 1355. Plaintiff, as a purchaser for resale, was under the same liability

with respect to adulterated food as the original importer. No provision of the Act suggested that it was protected from liability by a prior government inspection, although as a defense to criminal prosecution it would have been entitled to rely on other types of assurance. Cf. 21 U.S.C.A. § 333.

Finally, plaintiff's action was also barred by the exceptive provisions of the Tort Claims Act because it arose out of an alleged misrepresentation. Granted that the government's immunity from suit for failure to perform a discretionary function does not protect it from liability for lack of due care in the execution of operational details,[1] and assuming that the test performed was such a detail, plaintiff could not have been injured here but for the implied representation that the tomato paste did not violate the Act which it read into the form release notice issued by defendant. Inasmuch as the statute did not require the testing of every import, the mere fact that the tomato paste entered the country and took its place in the stream of interstate commerce did not imply any prior test by defendant. The statute did not impose upon the government an absolute duty to keep out all adulterated food but rather a duty, to the extent of the appropriation provided, to reduce the importation of adulterated food by testing such samples as the Secretary of Health, Education and Welfare deemed advisable. Aside from the representation which might be implied from the form of the release notice, plaintiff could have had no basis to assume that any specific lot of food had been tested.

Defendant is expressly protected from claims arising from misrepresentation by an exception in the Tort Claims Act. 28 U.S.C.A. § 2680(h).[2] This protection extends to misrepresentations which are negligent as well as those which are wilful. Jones v. Unites States, 2 Cir., 1953, 207 F.2d 563, 564, certiorari denied 1954, 347 U.S. 921, 74 S.Ct. 518, 98 L.Ed. 1075; National Mfg. Co. v. United States, 8 Cir., 1954, 210 F.2d 263, 275, certiorari denied, 1954, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108; Clark v. United States, 9 Cir., 1954, 218 F.2d 446, 452. This bar cannot be avoided by alleging negligence in the act of testing rather than in the words of the representation[3] because in either case the claim "arose out of" misrepresentation; if there had been no misrepresentation the plaintiff would not have been damaged. In a similar manner recovery has been denied for damages resulting from other excepted causes of action, false imprisonment and assault and battery, where, although neg-

---

1. Indian Towing Co. v. United States, 1955, 350 U.S. 61, 64, 69, 76 S.Ct. 122; Cf. Dalehite v. United States, 1953, 346 U.S. 15, 36, 58, 73 S.Ct. 956, 97 L.Ed. 1427.

2. § 2680 reads:
   "The provisions of this chapter and section 1346(b) of this title shall not apply to— * * *
   "(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. * * *"

3. Cf. Glanzer v. Shepard, 233 N.Y. 236, 241, 135 N.E. 275, 276, 23 A.L.R. 1425. At a time when recovery was first allowed for negligent misrepresentation, Judge Cardozo, in holding a weighmaster liable to a purchaser who relied upon his certificate (although the seller paid the weighmaster), emphasized the deliberate quality of such a certificate by speaking of it as an "'act in the law' * * * intended to sway conduct" and by suggesting that the defendants were held "* * * not merely for careless words * * * but for the careless performance of a service—the act of weighing—which happens to have found in the words of a certificate its culmination and its summary * * *". In a later case, after the significance of the distinction between act and representation had been minimized, Judge Cardozo, in Ultramares Corporation v. Touche, 255 N.Y. 170, 184, 174 N.E. 441, 446, 74 A.L.R. 1139, explained his earlier statement as follows: "* * * This was said in the endeavor to emphasize the character of the certificate as a business transaction, an act in the law, and not a mere casual response to a request for information. * * *"

ligence occurred prior to the damaging imprisonment or battery, that negligence, in itself, would not have caused damage. Duenges v. United States, D.C. S.D.N.Y., 114 F.Supp. 751, 752, (false imprisonment); Moos v. United States, D.C.D.Minn., 118 F.Supp. 275, 277, affirmed 8 Cir., 225 F.2d 705 (assault and battery); Rufino v. United States, D.C. S.D.N.Y., 126 F.Supp. 132, 136 (assault and battery); Panella v. United States, D.C.S.D.N.Y., 117 F.Supp. 119, 123, reversed on other grounds, 2 Cir., 216 F.2d 622 (assault and battery).

Motion granted. Complaint dismissed.