George Starke, J.
This case was tried with a jury. Plaintiff sued for breach of warranty and the defendant contended there was a lack of privity between the plaintiff and the defendant.
The following facts were conceded: Plaintiff was invited as a guest of a friend to lunch in the Peacock Alley Restaurant of the Hotel Waldorf. During the course of eating her lunch, plaintiff bit into a roll and sustained certain injuries due to a piece of glass concealed and imbedded in the roll. Plaintiff’s friend signed the luncheon check and paid for the lunch for herself as well as for the plaintiff. Plaintiff did not reimburse her friend for the cost of the meal.
Defendant rested at the end of plaintiff’s case and moved for a dismissal of the complaint, which motion was denied. Both sides then moved for a directed verdict. The court directed a verdict for the plaintiff and asked the jury to assess damages, albeit in an advisory capacity, for by consent determination of the question of damages was left for the court. The jury recommended the sum of $1,415 in favor of the plaintiff, and the court took the recommendation under advisement. Decision was also reserved on the renewed motion by the defendant to dismiss the complaint as a matter of law, with 10 days for briefs to both sides.
Defendant contends that plaintiff cannot be successful on the breach of warranty theory because there was no privity or contractual relationship between the plaintiff and the defendant under subdivision 2 of section 96 of the Personal Property Law. Defendant claims that plaintiff is not to be deemed the “ purchaser ” because her friend paid the check. Defendant further urges that plaintiff’s remedy was in negligence instead of in contract and that plaintiff has made the wrong election. In support thereof, reliance is primarily placed on Chysky v. Drake Bros. Co. (235 N. Y. 468) which holds that an implied warranty cannot be claimed by a third person; Redmond v. Borden’s Farm Prods. Co. (245 N. Y. 512); Smith v. Hanson (228 App. Div. 634); Dickinson v. Sperling (158 Misc. 905); Prinsen v. Russos (194 Wis. 142) where plaintiff’s friend paid the check; Bourcheix v. Willow Brook Dairy (268 N. Y. 1); Zotto v. Merkel Bros. (229 App. Div. 793); Block v. Empire State Doughnut Corp. (233 App. Div. 774) and Giminez v. Great Atlantic & Pacific Tea Co. (264 N. Y. 390).
The sole issue is whether plaintiff should be barred from recovery in a breach of warranty action because her friend paid the check.
Pood consumed on or off the premises in New York is considered a sale of food and not merely a service provided by a *498 restaurant. This was so held for the first time in New York in 1924, when the Court of Appeals, in Temple v. Keeler (238 N. Y. 344) decided that a restaurant sells the food which it provides for its guests. The court did not then rule as to il when exactly does the contract of sale take place? ”
In order to determine whether there was privity between the plaintiff and the defendant, let us examine these questions: When was the contract formed? When were the obligations of the respective parties created?
A contractual relationship existed between the plaintiff and the defendant long before payment of the restaurant check. The contract did not first come into being when the check was paid. An implied contract was formed when plaintiff and her friend became patrons of the restaurant, placed their orders for food and their orders were accepted. At that moment, an implied obligation on the part of both the plaintiff and her friend was individually created to pay for whatever was individually ordered. Simultaneously, the defendant impliedly agreed to serve each of them food fit for human consumption. The warranty arose then and ran to both of them. The warranty does not run only to the one who eventually pays the check. The actual payment of the check does not determine the time when the contract comes into being.
Even if plaintiff’s friend placed the order, the hotel knew it was serving an order for two persons. When one person undertakes to give the order for several people, that person is acting as the agent for the others. Which person pays the check and whether they reimburse each other or not is only a matter of private arrangement between the customers themselves. This is of no concern to the restaurateur as long as he is paid. The plaintiff and her friend relied on defendant’s implied promise to serve each of them with fit and wholesome food. Consequently, it makes no difference whether the plaintiff or her friend paid the check. Thus the Court of Appeals, per Cardozo, J., held, in Glanzer v. Shepard (233 N. Y. 236, 239): “ We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law (cf. MacPherson v. Buick Motor Co., 217 N. Y. 382, 390). There is nothing new here in principle. If there is novelty, it is in the instance only. One who follows a common calling may come under a duty to another whom he serves, though a third may give the order or make the payment.”
*499 The third-party-beneficiary rule may very well be applied here. Continuing with Glanzer v. Shepard (supra) Judge Cardozo said (p. 241): 11 We state the defendants’ obligation, therefore, in terms, not of contract merely, but of duty. Other forms of statement are possible. They involve, at most, a change of emphasis. We may see here, if we please, a phase or an extension of the rule in Lawrence v. Fox (20 N. Y. 268) as amplified recently in Seaver v. Ransom (224 N. Y. 233). If we fix our gaze upon that aspect, we shall stress the element of contract, and treat the defendants’ promise as embracing the rendition of a service, which though ordered and paid for by one, was either wholly or in part for the benefit of another (DeCicco v. Schweizer, 221 N. Y. 431; Rector, etc., St. Mark’s Church v. Teed, 120 N. Y. 583).”
Assume that plaintiff’s friend had said to plaintiff: “ You paid for the lunch last week. So I’ll pay today.” Or assume that the plaintiff, in accepting her friend’s invitation to lunch, had said: “ All right, you pay for the lunch and I’ll pay for the theatre tickets.” Would either of these suppositions change the respective obligation of both the patron and the restaurateur?
Assume that plaintiff and her friend had taken violently ill in the middle of the meal as a result of harmful or contaminated food necessitating their removal to a hospital by ambulance and that the check was not paid at all. The nonpayment would not bar their action. Even if the check were not paid, it would not alter the obligation of each to pay, nor would it alter the obligation owed to each patron not to breach the warranty of fitness. In the event of a failure or refusal to pay the check, the defendant would not be without remedy. The restaurant could enforce collection against each person who ordered food, or assert a counterclaim with respect thereto in an action by the patron. In fact, it is a criminal offense not to pay for a meal in a hotel. (See Penal Law, § 925.)
A careful analysis of the makeup of the contract and the formation thereof can produce only one sensible conclusion. A patron impliedly obligates himself to pay when the order is taken by the waiter, at which time the warranty likewise commences. No less an authority than Dean Prosser says: When a customer orders food in a restaurant, ‘ ‘ the understanding certainly is that the guest owns the food and must pay for it from the moment it reaches his table, and is free to wrap it up in a newspaper and carry it away if he likes.” (27 Minn. L. Rev. 152.) (Italics mine.)
*500 The precise issue did arise in Jensen v. Berris (31 Cal. App. 2d 537) where the plaintiff, in company with other members of a card club, allegedly sustained injuries from the eating of unwholesome food in a restaurant, and was allowed a recovery as against the restaurateur for breach of warranty, although she did not pay for the food herself.
The same issue also arose in Coca-Cola Bottling Works v. Lyons (145 Miss. 876). There the donee of a sub-vendee of food was given the right to recover for breach of warranty. The bottling company sold the bottled drink to the drugstore, where Mrs. Lyons and her friend procured two bottles. The friend had ordered and paid for both.
The argument advanced by defendant’s counsel in the case at bar that there is no privity between plaintiff and defendant and that the defendant is not liable because plaintiff did not pay the check is just as unsound and unconvincing as the argument presented in Ryan v. Progressive Grocery Stores (255 N. Y. 388) that the only damage to be recovered for breach of warranty is the price of the bread — the difference between the value of a good loaf and a bad one. •
Defendant’s counsel has overextended the use of the word “ privity ” here. He has confused the restaurant situation with the store purchase as to when the contract is formed in each ease. When a woman purchases food in a store, the contract of sale takes place when she either pays for the purchase or when the storekeeper permits a charge to her account.
Consequently, I find that plaintiff is deemed to be a “ purchaser ” even though her friend paid the check. The warranty ran to each from the time the order was placed and accepted. Aside from this finding, it is to be noted that the defendant admitted in its answer that plaintiff was a patron and did not deny this allegation in plaintiff’s complaint; nor did defendant ever amend its answer.
Viewed as a direct breach of contract, or under the theory of agency, or under the third-party-beneficiary doctrine, plaintiff is nonetheless entitled to recover. As Judge Cabdozo stated in Glanzer v. Shepard (supra, p. 241): “ The line of separation between these diverse liabilities is difficult to draw. It does not lose for that reason its correspondence with realities. Life has relations not capable always of division into inflexible compartments. The moulds expand and shrink.”
With respect to the jury’s recommendation of $1,415, the court finds that this sum is inadequate and will not fairly and reasonably compensate the plaintiff. Plaintiff sustained the *501 loss of her upper right lateral tooth which broke off irregularly at the gum line when she bit into the roll. The stump of the tooth was extracted. Another tooth was slightly damaged. The laceration to the gums required constant dental treatment for a period of 20 days before it healed to an extent which would permit the taking of dental impressions to replace the tooth. No temporary replacement could be made during this period and plaintiff was obliged to walk about looking like a child who had lost its first tooth. Plaintiff is a publicity and promotional writer in the cosmetic field and her loss of earnings was approximately $450. The dentist’s bill, which the defendant conceded was reasonable, amounted to $165. Because the plaintiff is a mild cardiac she was prevented from taking certain drugs and medicines to relieve her pain. Of course, she suffered the permanent loss of a front tooth. For the foregoing reasons, I find the jury’s recommendation insufficient and hereby award the sum of $3,000 to plaintiff. Ten days’ stay of execution; 60 days to make a case.