Richard S. Heller, J.
The claim as filed on July 30, 1954 sought recovery of damages on a number of grounds. By amendment and stipulation of the parties, the claim was limited to recovery of the expense of relocating a gas transmission pipe line under the provisions of section 346 of the Highway Law.
The pertinent provision of section 346 reads as follows: “ Telephone and telegraph wires, power transmission and gas, oil and water lines, conduits, cables of every kind and nature, that cross any thruway may, in the discretion of the superintendent of public works, be relocated in suitable facilities to be installed under or over and across any such thruway. The expense of such relocation and of installing such facilities shall be deemed to be part of the cost of the thruway. The work of such relocation may be done by the owner of such wires, lines, conduits and cables, and the superintendent of public works is hereby empowered to enter into an agreement with such owner for the performance of all or any part of the work of such relocation at the expense of the state. ’ ’
The State does not dispute the effect of this statutory provision as a modification of the common-law rule that utility companies maintain their services subject to the duty to relocate at their own expense. The State however, urges that under the statutory provision, the State can only be held liable for the cost of relocation where such relocation is made necessary by the public improvement. Here the State asserts that the relocation was made necessary by claimant’s negligence rather than by the public improvement.
Claimant obtained from the Federal Power Commission a certificate of convenience and necessity for the construction of a high-pressure gas transmission line from Lambertville, New Jersey to Boston, Massachusetts. The line was to furnish to New Jersey, New York and the New England area natural gas from the southwestern part of the United States for domestic and industrial consumption.
On or about January 22,1951 claimant entered into an agreement with Ford, Bacon & Davis, Inc., an internationally known firm of consulting engineers, for the design and supervision of construction of this high-pressure gas transmission pipe line. *440 Ford, Bacon & Davis, Inc. proceeded to carry out this contract and between December 26,1951 and June 11, 1952 rights of way either in the form of temporary and permanent easements or licenses with a yearly fee involved, were obtained over property in Rockland County in the village of Suffern and the village of Hillburn. These rights of way were obtained for the purpose of installing the pipe line which in this particular area was to run in a northeasterly direction from a State highway known as Route 17 to a State highway known as Route 59 crossing both highways and the Ramapo River. On April 17,1952 the Department of Public Works of the State of New York granted a permit for the installation of this pipe line under Routes 17 and 59 at locations designated by Ford, Bacon & Davis, Inc., acting as agents for the claimant.
About June, 1952 work was actually being carried on in this area consisting first of clearing and grading, trenching and finally laying the pipe line. At about the time this work commenced in June, 1952 a consulting engineer firm known as Clarke & Rapuano which had been employed by the Department of Public Works or the New York State Thruway Authority to design the New York State Thruway from the New Jersey line at Suffern north to the village of Harriman, became aware of the activities of the claimant in this case. Claimant’s agent was advised that it was contemplated that the New York Thruway would be constructed through this area and between. June and October 2, 1952 a number of conferences were had between employees of Ford, Bacon & Davis, Inc. and Clarke & Rapuano, all of which dealt with a number of problems involved in the relationship of the construction of the Thruway and the pipe line.
Up until October 1, 1952 Clarke & Rapuano were unable to furnish to claimant’s agent any definite information as to the precise location of the Thruway in this area although general information as to the proposed route and as to a proposed relocation of the Ramapo River was given to claimant’s agent.
On October 1, 1952 at a time when claimant’s agent was preparing for the last stages of the installation of the pipe line through this area, Clarke & Rapuano furnished a map dated September 17,1952 labelled an alignment plan of the interchange area and showing in general a proposed location for the Thruway. An engineer employed by Clarke & Rapuano drew in pencil on the map the proposed relocated channel for the Ramapo River.
At this point there is a direct conflict in the testimony of the engineer employed by Clarke & Rapuano and the engineer *441 employed by claimant’s agent. The representative of Clarke & Rapuano asserts that he did not indicate to the representative of claimant’s agent the elevation of the new proposed Ramapo channel but asserts that he told the representative of claimant’s agent generally where the new channel would run and how the elevation of the bed of that channel could be determined, namely by running a straight grade between two bridges some 4,000 feet apart. The representative of claimant’s agent asserts that he was given at that time a precise elevation for the new channel and that the pipe line was thereafter installed at an elevation placing the top of the pipe approximately four feet below the proposed elevation of the relocated river bed.
Thereafter claimant’s agent completed the installation of the pipe line in this area generally at a greater depth below ground level than normal in order to protect the pipe line from any possibility of exposure and from any possible damage which might result from the heavy construction equipment which would be used in the construction of the Thruway.
About February, 1953, after a number of requests, claimant furnished to Clarke & Rapuano a so-called “ as built ” plan of the pipe line in this area so that in the design of the Thruway Clarke & Rapuano would have detailed information concerning the pipe line. The furnishing of this “ as built” plan was delayed due to certain difficulties which claimant encountered, having no relevancy to this claim but which had resulted in a discontinuance of work with consequent limitation of personnel available to complete the ‘‘ as built ’ ’ plan. Thereafter Clarke & Rapuano requested information as to the easements and rights of way owned or possessed by claimant and this information was furnished.
The final plans made by Clarke & Rapuano were completed on July 30,1953 and finally approved by the Thruway Authority on August 24, 1953. In September, 1953 claimant’s pipe line including the area in question here was placed in service and utilized to supply gas for domestic and industrial purposes.
Between October 2, 1953 and March 5, 1954 the Department of Public Works appropriated property for Thruway purposes in this area by filing notices in the Department of State and between September 21,1954 and October 21,1954 title vested by filing in the appropriate County Clerk’s office.
In March, 1954 a new channel had been dredged for the relocation of the Ramapo River and it was discovered that the pipe line as installed projected about a foot and a half above the bed of the relocated river. About April 2, 1954 the Department of Public Works instructed the claimant to immediately relocate *442 the pipe line so that it would not protrude above the bed of the relocated river and that such relocation was to be performed at claimant’s expense. Claimant thereupon entered into a contract for the performance of the relocation and this contract was completed about the middle of May, 1954 and involved the lowering of about 325 feet of this 26-inch pipe line.
It is clear that at the time of the construction of this pipe line the planning of the Thruway in this area was in a most preliminary state. Clarke & Bapuano had a number of survey parties in the field but were at best in the process of acquiring information and doing those things preliminary to an actual design. No definite route for the Thruway had been established and there was at most a general idea as to precisely how and where the Thruway was to be located and the Bamapo Biver to be relocated. Clarke & Bapuano had ascertained bench marks from which elevations could be determined as shown on the preliminary alignment plan of the interchange area as furnished to claimant’s agent but it does not appear that Clarke & Bapuano had established any actual elevations for construction plans.
Claimant was concerned with elevations only in regard to the relationship to the proposed construction and then principally for the protection of its own property. In normal pipe line construction elevations are immaterial since it is the practice to place the top of the pipe line 30 inches below ground level where the surface is loam and 20 inches below ground level where the surface is rock. The pipe line thus follows the contour of the ground and turns and grades do not affect the operation of the pipe line.
There is some further dispute in the testimony in the record as to the precise elevation at which the pipe line was installed in the area which thereafter came to be the bed of the Bamapo Biver. It does not appear however that these conflicts in testimony require resolution for determination of the issue presented here.
The position of the State is that claimant’s agent was furnished with complete and accurate information sufficient to permit it to install the pipe line at the proper depth so that it would not have to be relocated. The claimant on the other hand contends that at the time of the construction of the pipe line it was under no obligation to do anything except install its pipe line in accordance with its certificate of convenience and necessity; that it did in fact make reasonable efforts to protect its property and avoid any necessity for relocation and interruption of service and if that effort failed it was due to the inadequacies and inaccuracies of the information with which it was furnished. *443 This court fails to see any reason for a denial of compensation to the claimant in accordance with the statute. At the time that this pipe line was installed the State of New York acting through the Department of Public Works and the Thruway Authority had not appropriated any land and had not acquired any rights in this area. It had at most through its consulting engineers, arrived at a general conclusion as to the broad area through which the Thruway would travel and the necessity for a relocation of the Ramapo River. Even the consulting engineers arrived at no final decision until after the pipe line was completed and that decision was not approved until about a month before the pipe line went into actual operation. The claimant was dealing with its own property and it was free to deal with that property in a manner consistent with its purposes and authority. The State had acquired no right or basis for interference with or control over the manner in which claimant dealt with its property in this particular area.
The State’s position is that under the statute the State is liable for the cost of relocation only where the relocation is made necessary by the public improvement. This is unquestionably an accurate statement of the law. In this case the State urges that relocation was not made necessary by the public improvement but resulted from the negligence of the claimant in failing to install the pipe line in conformance with the plan for the Thruway. Assuming that the State had shown adequate and full information to the claimant from which the claimant could have installed its pipe line without the necessity of relocation for the Thruway as it was finally constructed, would this have eliminated the obligation of the State to make compensation for the cost of relocation? It appears that such an obligation on the part of the claimant could arise only if the claimant owed some duty to the State. Here there is no vestige of any such obligation on the part of the claimant. Even the State recognizes that had the claimant made no effort or had it proceeded in ignorance of the State’s intention to utilize some part of this area for Thruway purposes, there could be no doubt that claimant would be entitled to recovery of the cost of relocation. This position of the State is shown by its effort to invoke the rule stated by Chief Judge Cardozo in Moch Co. v. Rensselaer Water Co. (247 N. Y. 160,167) where the opinion of the court in Glanzer v. Shepard (233 N. Y. 236, 239) is quoted to the effect: ‘ ‘ ‘ It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all ’ ”. In analyzing the rule the court pointed out that it applies where there is a relationship *444 giving rise to a duty of care. As the court stated (p. 167): “ If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward ’ ’.
Claimant was under no obligation to the State of New York other than to refrain from deliberate enhancement of damages. There was no contractual relationship and to apply the tort rule as stated in Moch Co. v. Rensselaer Water Co. (supra) would be an extension of that rule far beyond any previous application. The claimant had a very real obligation to carry out its mandate as a public utility to expeditiously and properly construct its gas transmission pipe line. This it did with due and proper care. The mere fact that it had knowledge of some contemplated use of the. area for Thruway purposes and that it tried to learn in as great detail as possible what those plans were and that it tried to so construct its property so as to avoid any danger to that property by whatever activities the State might undertake, cannot give rise to an obligation to the State cutting off claimant’s right to compensation.
The court finds that claimant was required to relocate approximately 325 feet of its 26-inch pipe line upon a determination made by the Superintendent of Public Works within his authority under section 346 of the Highway Law and the claimant is entitled to compensation therefor. There was no substantial dispute over the cost of the relocation and plaintiff presented evidence supporting its claim with the exception of one item. That item relates to overhead at 4% in the amount of $1,691.06. The evidence indicates that this was a purely arbitrary figure not based upon any records or actual costs but was intended to cover the time and effort of the management executives of claimant. It is unsupported in the record by any actual measure and was not shown to have even a reasonable relationship to an experience allocation of expense since by claimant’s own testimony, it was at this time a new company without a sufficient experience pattern for such a determination. The court finds, therefore, that claimant is entitled to recover the sum of $40,828.07, with interest thereon from July 30, 1954.
This opinion serves as the decision of this court in writing pursuant to section 440 of the Civil Practice Act and judgment may be entered in accordance herewith.