**KITTY HAWK AIRCARGO,
INC., Plaintiff,**

v.

**ARTHUR D. LITTLE, INC., Defendant.**

**Civil Action No. 94–12081–RCL.**

United States District Court,
D. Massachusetts.

May 14, 1996.

---

Michael J. Lack, Gregory M. Cogan, Lack & Associates, Boston, MA, Scott W. Woehr, Doyle & Bachman, Washington, DC, for plaintiff Kitty Hawk Aircargo, Inc.

Jeffrey B. Rudman, Hale & Dorr, Boston, MA, for defendant Arthur D. Little, Inc.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

This case is before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, the plaintiff's motion is DENIED and the defendant's motion is GRANTED.

### I. *Facts*

This case involves the bidding process for an air carrier service contract known as "ANET 93–01." The following basic facts are not disputed. The United States Postal Service ("USPS"), whose business the contract would award, hired Arthur D. Little ("ADL") to assist in evaluating the bids. Before the bids were submitted, Conrad Kalitta, an affiliate of one of the eventual bidders on the contract (Postal Air, now Kitty Hawk Aircargo, Inc., the plaintiff *) had two discussions with William Cole, an ADL consultant, regarding the possibility of Cole's future employment with Kalitta's firm. Kitty Hawk was eventually awarded the contract, and two losing bidders filed a bid protest based on the Kalitta–Cole contacts, which they alleged created an impermissible conflict of interest for Cole. After hearing on a motion for summary judgment, Judge Royce C. Lamberth of the United States District Court for the District of the District of Columbia held that those contacts had created a conflict of interest and that USPS had not followed its own procedure in handling that conflict. *Express One Int'l Inc. v. United*

---

* Throughout this decision, the court will refer to the plaintiff as "Kitty Hawk," whether the plain- tiff's corporate name was Kitty Hawk or Postal Air at the time of the transaction being discussed.

*States Postal Service,* 814 F.Supp. 93 (D.D.C. 1992). For these reasons, the court set aside the contract as awarded. The parties, including Kitty Hawk (which had intervened as a defendant) subsequently settled that case by stipulation for Compromise Settlement and Order of Dismissal ("stipulation of settlement"), approved by Judge Lamberth.

Kitty Hawk then sued ADL, alleging that ADL was negligent in its handling of the conflict of interest, and that such negligence foreseeably caused Kitty Hawk to suffer millions of dollars in damages through its loss of the ANET contract.

Kitty Hawk now moves in this court for summary judgment on its negligence claim, while ADL argues that Kitty Hawk's claim is barred by one or all of the following: the terms of the stipulation of settlement; the lack of any wrongdoing on ADL's part, as defined by the contours of its relationship to USPS; and the lack of any tort- or contract-based duty running from ADL to Kitty Hawk that would give rise to a claim for its breach.

## II. *Standard for Summary Judgment*

Under Fed.R.Civ.P. 56(c), a court "may grant summary judgment 'if all the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *McCarthy v. Northwest Airlines,* 56 F.3d 313, 314 (1st Cir.1995), *quoting* Fed.R. Civ.P. 56(c).

## III. *Analysis*

### A. *Choice of Law*

■ As a threshold matter, the court notes that the parties have agreed that the law of the District of Columbia governs this case, at least insofar as the question of a tort duty is concerned. There is disagreement about which jurisdiction's law governs the determination of fault on the part of the plaintiff; the plaintiff has put forward Massachusetts and Texas as possibilities. However, because the court does not reach that issue, no decision is necessary on which law governs the issue. As for the contract claim,

the choice of law rules parallel those for tort; the court's reasoning, below, applies to both claims.

■ A federal court sitting in diversity applies the choice-of-law rules of the jurisdiction in which the court sits. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Under Massachusetts law, the court uses a "functional approach" which involves " 'assessing various choice-influencing considerations,' including those provided in the Restatement (Second) of Conflict of Laws (1971), and those suggested by various commentators." *Cosme v. Whitin Mach. Works, Inc.,* 417 Mass. 643, 632 N.E.2d 832, 834 (1994) (*quoting Bushkin Assocs., Inc. v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662, 668 (1985)). After considering the factors set forth at §§ 6, 145, 188(2) of the Restatement (Second) of Conflict of Laws (1971), the court concludes that the District of Columbia has the most significant relationship to the claim. The duty alleged as to both claims arose from a contractual relationship entered into in the District of Columbia between an agency of the federal government and a contractor which performed its duties largely in the District; the parties to that contract (USPS and ADL) met and worked together in the District; and any claimed conflict of interest arising under federal conflict of interest laws or arising from ethics training has its genesis in the District. In short, the District of Columbia was the home base for the relationship between USPS and ADL, and the location to which Kitty Hawk sent its bid to be evaluated.

Therefore, at least with respect to the duty portion of the claims, the court concludes that this case is governed by the law of the District of Columbia.

### B. *Duty Owed to Plaintiff Who Suffers Financial Loss*

■ As mentioned above, the defendant advances three arguments in support of its motion for summary judgment. Because the court determines that the question of duty owed is dispositive of the claim, there is no reason to reach the other arguments.

In the voluminous memoranda filed in connection with this motion, Kitty Hawk devoted little ink to identifying the source of the "duty" it alleged had been breached. This court perceives the necessity of determining whether a duty is owed to Kitty Hawk as implicating two of the plaintiff's claims: both the tort (negligence) claim and the contract (third-party beneficiary) claim. Accordingly, the court will inquire into the defendant's duty to the plaintiff under each of these theories.

### 1. Tort Duty

At oral argument, Kitty Hawk clarified that the tort duty owed it by ADL was one to avoid conflicts of interest, or more broadly to avoid the appearance of a conflict of interest. The source of this duty, it was argued, was either the ethics training that the ADL employees involved received in Washington, D.C. during the week of June 15, 1992, or "state-law duty concepts," which the plaintiff never defined. Assuming *arguendo* that at least one of these duties exists, the court is not convinced that it runs to Kitty Hawk, for the reasons set forth below.

The particular type of loss claimed by Kitty Hawk—a loss of purely economic benefit, unaccompanied by any physical injury or damage to property—falls within a recognized subcategory of tort claims, so-called "economic loss" claims. The District of Columbia's highest court, in *Aronoff v. The Lenkin Co.*, 618 A.2d 669 (D.C.1992), poses the relevant inquiry as "whether or not the defendant owed a duty of reasonable care to the plaintiff. *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441, 444–48 (1931) (Cardozo, J.) If no duty was owing, the lack of contractual privity normally bars recovery." *Id.* at 685.

The District of Columbia follows the traditional distinction set forth in two leading New York cases on the economic-loss doctrine, *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) and *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922). Stated briefly, this distinction involves a decision about the foreseeability of the plaintiff's injury as a result of the defendant's activity. The *Ultramares* decision enunciates courts' unwillingness to expose defendants to "liability in an indeterminate amount for an indeterminate time to an indeterminate class," *Ultramares*, 174 N.E. at ·444, while *Glanzer* recognizes that there may be situations in which, despite absence of a contractual relationship between plaintiff and defendant, the defendant may be held liable for the plaintiff's merely-economic damage. To fall into the *Glanzer* category, a plaintiff must show that he or she was so clearly foreseeable as to have a "bond [with the defendant] ... so close as to approach that of privity," *Ultramares*, 174 N.E. at 446 (discussing *Glanzer* ). In essence, Justice Cardozo reasoned, a *Glanzer*-type plaintiff was what courts would now call an intended third party beneficiary of the contract: an individual for whose benefit "the service rendered by the defendant was primarily" performed. *Ultramares*, 174 N.E. at 446.

The question before the court, then, is whether Kitty Hawk was a foreseeable plaintiff as defined in *Ultramares, Glanzer,* and their progeny. To find that a plaintiff who has suffered economic loss is a *Glanzer*-type plaintiff, courts require more than the plaintiff's membership in a class that is likely to suffer; instead, the plaintiff him- or herself, *individually,* must be known or reasonably knowable. *See, e.g., Security Nat'l Bk. v. Lish*, 311 A.2d 833, 835 (D.C.1973) ("where information is supplied *directly* to a third party (or indirectly for the benefit of a *specific* third party), then the same duty of reasonable care exists [as exists toward one's employer], notwithstanding a lack of privity." *Id.* (emphasis added)) Another way of expressing this is that one must determine whether the plaintiff is, like the plaintiff in *Glanzer,* the person for whom the defendant performs the duty; or whether the plaintiff, like that in *Ultramares,* is one of a large class of people who may foreseeably be injured by the defendant's actions.

Kitty Hawk argues that it was in fact the sole foreseeable plaintiff, since it was Kitty Hawk alone that won the ANET contract, and Kitty Hawk alone which was damaged by the setting aside of that award due to the conflict of interest. Hindsight, however, provides an undesirable perspective in

determining foreseeability. The question before the court is not whether, after the conflict was created, the bids submitted, and the contract awarded and set aside, it was "foreseeable" that Kitty Hawk might sue. Rather, the court must determine whether, from a vantage point closer in time to when the conflict arose, it was reasonably foreseeable that it would be Kitty Hawk that would be injured by any conflict or whether, to the contrary, Kitty Hawk was at that time one of an indeterminate class of potential plaintiffs.

The court concludes that Kitty Hawk was not a foreseeable plaintiff within the definition in *Ultramares* and *Glanzer*. At the time that Kalitta and Cole had the discussions that Judge Lamberth found constituted a conflict of interest, Kitty Hawk had not yet submitted its bid on the ANET contract. Kitty Hawk, along with an indeterminate number of potential bidders, could foreseeably have been harmed by that conflict of interest. As noted above, however, mere foreseeability is not enough; it is necessary in economic-loss cases that the plaintiff be so clearly the object of the action taken that benefit to the plaintiff be

> the "end and aim of the transaction," as certain and immediate and deliberately willed as if a husband were to order a gown to be delivered to his wife, or a telegraph company, contracting with the sender of a message, were to telegraph it wrongly to the damage of the person expected to receive it.

*Ultramares,* 174 N.E. at 445 (citing cases). Kitty Hawk cannot shoehorn its claim into this narrow category.

Accordingly, the court concludes that ADL owed Kitty Hawk no tort duty.

### 2. *Contract Duty*

■ Under the law of the District of Columbia, a third party beneficiary must be an "intended" beneficiary to recover under a contract between two others. *District of Columbia v. Campbell,* 580 A.2d 1295, 1302 (D.C.1990) (citing *Bay Gen. Indus., Inc. v. Johnson,* 418 A.2d 1050, 1055 (D.C.1980)). To be intended, a beneficiary need not be named in the contract, as long as he or she is ascertainable from the contract and from the circumstances of the contract. *Western Un-*

*ion Tel. Co. v. Massman Constr. Co.,* 402 A.2d 1275, 1277 (D.C.1979).

Courts in the District of Columbia, faced with the question of whether a third party is an intended beneficiary of a contract, look to Justice Cardozo's reasoning in *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 444–48 (1931). As discussed fully above, the principle behind determining that certain persons are not intended beneficiaries is that the defendant should not be exposed to "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Id.* at 444. In the contract context, as in the tort context, District of Columbia courts distinguish between *Ultramares*-type plaintiffs (members of an " 'indeterminate class' unknown to the parties in privity," *Needham v. Hamilton,* 459 A.2d 1060, 1062 (D.C.1983) (citing cases)) and *Glanzer*-type plaintiffs ("impact upon the third party is 'not an indirect or collateral consequence,' but the 'end and aim of the transaction.' " *Id.,* quoting *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (N.Y.1922)). Analysis of Kitty Hawk's contract claim is thus indistinguishable from analysis of its tort claim under applicable law. For the reasons set forth above, therefore, the court concludes that Kitty Hawk is not the intended third-party beneficiary of the ADL–USPS contract and therefore cannot sue on that contract.

The defendant's motion for summary judgment is therefore GRANTED, and that of the plaintiff is DENIED. Judgment shall enter for the defendant.

So ordered.